**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

SUSAN K. POWER,

        Plaintiff,

v.                                                   Case No. 0:23-cv-60440-DSL-JMS

AIRCRAFT SERVICE INTERNATIONAL,
INC. d/b/a MENZIES AVIATION,

        Defendant.

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 1

    A. Plaintiff Cannot Establish a Prima Facie Case of Age Discrimination ........................... 1

    1. Muldrow Does Not Help Plaintiff Establish an Adverse Employment Action ................... 1

    2. The Court Should Not Disregard that Torres (64) Assumed Power's Duties ..................... 2

    B. Plaintiff Cannot Establish a Prima Facie Case of Disability Discrimination ................... 2

    C. Plaintiff Cannot Establish FMLA Interference ................................................................ 3

    D. Plaintiff Cannot Establish FMLA Retaliation .................................................................. 3

    E. Plaintiff Cannot Establish FCRA Retaliation ................................................................... 4

    F. Plaintiff Cannot Establish Pretext ..................................................................................... 4

III. CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adigun v. Express Scripts, Inc.*,
   742 F. App'x 474 (11th Cir. 2018) .................................................................................... 4

*Baker v. Russell Corp.*,
   372 F. App'x 917 (11th Cir. 2010) .................................................................................... 5

*Berry v. Crestwood Healthcare LP*,
   84 F.4th 1300 (11th Cir. 2023) ..................................................................................... 1, 5

*Butler v. Econ-O-Check Corp.*,
   No. 1:22-cv-1465, 2024 WL 1252959 (N.D. Ga. Mar. 4, 2024) ...................................... 5

*Cavanaugh v. Wal-Mart Stores, LP.*,
   No. 3:22-CV-1908, 2024 WL 2094010 (M.D. Pa. May 9, 2024) .................................... 1

*Damon v. Fleming Supermarkets of Fla., Inc.*,
   196 F.3d 1354 (11th Cir. 1999) ........................................................................................ 5

*Dibiase v. SmithKline Beecham Corp.*,
   847 F. Supp. 341 (E.D. Pa. 1994) ..................................................................................... 2

*Garcia-Cabrera v. Cohen*,
   81 F. Supp. 2d 1272 (M.D. Ala. 2000) ........................................................................ 8, 10

*Gogel v. Kia Motors Mfg. of Ga., Inc.*,
   967 F.3d 1121 (11th Cir. 2020) ........................................................................................ 5

*Goss v. George Washington Univ.*,
   942 F. Supp. 659 .............................................................................................................. 2

*Hall v. Teva Pharm. USA, Inc.*,
   214 F. Supp. 3d 1281 (S.D. Fla. 2016) ........................................................................... 10

*Hipp v. Liberty Nat'l Life Ins. Co.*,
   973 F. Supp. 1033 (M.D. Fla. 1997) ................................................................................ 2

*Hrdlicka v. Gen. Motors LLC*,
   No. 20-11015, 2022 WL 989339 (E.D. Mich. Mar. 31, 2022) ........................................ 2

*Kay v. Lester Coggins Trucking, Inc.*,
   141 F. App'x 824 (11th Cir. 2005) ................................................................................... 3

*Knight v. Pabey*,
  No. 2:05-CV-191, 2007 WL 9771527 (N.D. Ind. June 27, 2007) ............................................. 2

*Longoria v. Autoneum N. Am., Inc.*, No.,
  3:14CV2648, 2016 WL 4761727 (N.D. Ohio Sept. 13, 2016) ................................................... 2

*Martinez v. Hempstead Indep. Sch. Dist.*,
  No. CIV.A. H-12-314, 2013 WL 3873237 (S.D. Tex. July 25, 2013) ....................................... 2

*Matsushita*,
  475 U.S. (1986) ..................................................................................................................... 8, 9

*McGovern v. Transamerica Ins. Fin. Corp.*,
  854 F. Supp. 393 (D. Md. 1993) ................................................................................................. 2

*Muldrow v. City of St. Louis*,
  144 S. Ct. 967 (2024) ............................................................................................................. 1, 2

*Preciado v. Recon Sec. Corp.*,
  No. 23-cv-00052, 2024 WL 3512081 (W.D. Tex. July 23, 2024) .............................................. 1

*Ritchie v. Indus. Steel, Inc.*,
  426 F. App'x 867 (11th Cir. 2011) ............................................................................................. 5

*Smith v. Lockheed-Martin Corp.*,
  644 F.3d 1321 (11th Cir. 2011) .................................................................................................. 3

*Smith v. Marcus & Millichap, Inc.*,
  991 F.3d 1145 (11th Cir. 2021) .................................................................................................. 6

*Sprowl v. Mercedes-Benz U.S. Int'l Inc.*,
  815 F. App'x 473 (11th Cir. 2020) ....................................................................................... 8, 10

*Stephens v. Thomas Pub. Co.*,
  279 F. Supp. 2d 279 (S.D.N.Y. 2003) ........................................................................................ 3

*Winborn v. Supreme Beverage Co.*,
  572 F. App'x 672 (11th Cir. 2014) ............................................................................................. 4

Wisner v. Int'l Auto. Components Grp. N. Am., Inc., No. 1:21-cv-537,
  2023 WL 145006 (N.D. Ala. Jan. 10, 2023) .............................................................................. 4

*Wolf v. Buss (Am.), Inc.*,
  77 F.3d 914 (7th Cir. 1996) ........................................................................................................ 8

*Yoho v. Bank of N.Y. Mellon Corp.*,
  No. 2:17-cv-917, 2020 WL 7336579 (W.D. Pa. Dec. 14, 2020) .............................................. 10

Defendant Aircraft Service International, Inc. d/b/a Menzies Aviation ("Menzies" or "Defendant"), submits this reply brief in support of Defendant's Motion for Summary Judgment.

## I. INTRODUCTION

Above all else, this is a case about pretext.  David Scott Power ("Power") was terminated for permitting an outside company to use Menzies' vacuum truck.  Plaintiff does not meaningfully dispute that he did so, that he is the only Menzies employee ever to do so, and that doing so exposes Menzies to significant liability and risk.  (ECF No. 70, Defendant's Statement of Material Facts ("Def. SMF") ¶¶78–79, 85–92; ECF No. 82, Plaintiff's Response to Defendant's SMF ("Pl. SMF") ¶¶78–79, 85–92).  Despite these admissions, Plaintiff's attempt to show that these reasons were a pretext for prohibited discrimination falls short.  Plaintiff also cannot make a *prima facie* case for any of her claims, and fails to address the proverbial elephant in the room:  Why would Torres discriminate against his decades-long best friend?

## II. ARGUMENT[1]

### A. *Plaintiff Cannot Establish a* **Prima Facie** *Case of Age Discrimination*

#### 1. *Muldrow* Does Not Help Plaintiff Establish an Adverse Employment Action

Plaintiff's Response to Defendant's Motion (ECF No. 83 ("Plaintiff's Response" or "Pl. Res.")) relies on *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024), to argue Power suffered an adverse employment action.  Other than *Muldrow*, Plaintiff makes no argument.

*Muldrow* does not apply here for several reasons.  As Plaintiff points out, *Muldrow* was a Title VII sex-discrimination case, not a Florida Civil Rights Act ("FCRA") or age discrimination case.  Even if *Muldrow* does apply beyond sex discrimination, *Muldrow* only applies outside the context of the *McDonnell Douglas* framework, which requires an "adverse employment action." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023).  The phrases "adverse employment action" and "prima facie" do not appear in *Muldrow*, and *McDonnell Douglas* is neither cited nor referenced.  Additionally, *Muldrow* is limited to cases involving job transfers (this case does not).  Courts have correctly limited *Muldrow* to transfer cases.  *Preciado v. Recon Sec. Corp.*, No. 23-cv-00052, 2024 WL 3512081, at *2 (W.D. Tex. July 23, 2024); *Cavanaugh v. Wal-Mart Stores, LP.*, No. 3:22-CV-1908, 2024 WL 2094010, at *4 (M.D. Pa. May 9, 2024).  The limitation aligns with the Court's choice to repeatedly use "transferee" in *Muldrow* and not broader language like "employee" or "Title VII plaintiff." *Muldrow*, 144 S. Ct. 967.

---

[1] Plaintiff does not dispute that there is no direct evidence of discrimination or retaliation.

Even if *Muldrow* applied, it does not lower the bar so drastically that Power can establish an adverse employment action here.  (*See* Defendant's Motion, p. 6–7).

### 2. The Court Should Not Disregard that Torres (64) Assumed Power's Duties

Plaintiff relies on *Hipp v. Liberty Nat'l Life Ins. Co.*, 973 F. Supp. 1033 (M.D. Fla. 1997), to argue "an employer cannot duck liability by 'covering its tracks' with a short-term replacement." (Pl. Res., p. 9).[2]  Plaintiff otherwise fails to address the authorities cited in Defendant's Motion establishing that the six-month gap between Power's termination and Menard's promotion breaks any causal relationship and dooms Plaintiff's claim.  (Defendant's Motion, p. 7).[3]

This case is nothing like *Hipp*, where there was ample evidence to suggest the defendant strategically replaced the plaintiff with an older individual strictly to avoid liability.  The evidence showed that decision-makers were aware they might face liability if they replaced the plaintiff with a younger individual due to a recent experience in similar litigation; the older individual was not the first choice for the position and was only selected after multiple others turned it down; when the older individual was recommended, an executive commented that he would not get the position due to his age; and by the time of the lawsuit, the older individual was no longer employed.  *Hipp*, 973 F. Supp. 1033, 1041.  There is no similar evidence here.

### B.   *Plaintiff Cannot Establish a* **Prima Facie** *Case of Disability Discrimination*

Plaintiff admits Power was not disabled.  Plaintiff also admits Power's wrist pain was transitory.  (Def. SMF ¶¶27, 38; Pl. SMF¶¶27, 38).  Plaintiff nonetheless tries to make out a disability discrimination claim by arguing Power was perceived as disabled or had a record of disability.  However, the transitory nature of Power's wrist pain dooms the claim even under Plaintiff's perceived-as or record-of theories.  *Kay v. Lester Coggins Trucking, Inc.*, 141 F. App'x

---

[2] Based on Defendant's research, no court has ever relied on *Hipp* for this "cover up" argument, even though it has been "on the books" for nearly thirty years.

[3] The weight of authority supports Defendant's position. *See Longoria v. Autoneum N. Am., Inc.*, No. 3:14CV2648, 2016 WL 4761727, at *7 (N.D. Ohio Sept. 13, 2016) (75 days insufficient); *Hrdlicka v. Gen. Motors LLC*, No. 20-11015, 2022 WL 989339, at *21 (E.D. Mich. Mar. 31, 2022), *aff'd*, 59 F.4th 791 (6th Cir. 2023), *and aff'd*, 63 F.4th 555 (6th Cir. 2023) ("three or four months"); *Goss v. George Washington Univ.*, 942 F. Supp. 659, 664 n. 10 (D.D.C. 1996) (five months); *McGovern v. Transamerica Ins. Fin. Corp.*, 854 F. Supp. 393, 400 (D. Md. 1993), *aff'd*, 27 F.3d 563 (4th Cir. 1994) (six months); *Martinez v. Hempstead Indep. Sch. Dist.*, No. CIV.A. H-12-314, 2013 WL 3873237, at *5 (S.D. Tex. July 25, 2013) (seven months); *Dibiase v. SmithKline Beecham Corp.*, 847 F. Supp. 341, 345 (E.D. Pa. 1994), *rev'd on other grounds*, 48 F.3d 719 (3d Cir. 1995) (almost one year); *Knight v. Pabey*, No. 2:05-CV-191, 2007 WL 9771527, at *10 (N.D. Ind. June 27, 2007) (13-months).

824 (11th Cir. 2005) (a plaintiff with a temporary restriction was not regarded as disabled); *Stephens v. Thomas Pub. Co.*, 279 F. Supp. 2d 279 (S.D.N.Y. 2003) (records of a temporary impairment or short-term disability are insufficient to establish a record of ADA disability). Even if Power's wrist pain were not transitory, there is insufficient evidence to prove he was perceived as, or had a record of, being disabled.

Regarding causation, Plaintiff does not dispute she is unable to identify a comparator. By citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011), she tacitly admits she cannot establish causation. *Smith* explains that the failure to identify a comparator does not always require summary judgment because "establishing the elements of the *McDonnell Douglas* framework is not . . . the *sine quo non* for a plaintiff to survive . . . summary judgment." *Id.*

### C. Plaintiff Cannot Establish FMLA Interference

For the reasons in Defendant's Motion and its Response in Opposition to Plaintiff's Partial Motion for Summary Judgment, the Court should dismiss Plaintiff's FMLA interference claim.[4] Notably, Plaintiff does not dispute Power exceeded his FMLA allotment, and would thereby not be entitled to reinstatement, if this Court concludes his September 2021 leave is FMLA qualifying.

### D. Plaintiff Cannot Establish FMLA Retaliation

Plaintiff does not dispute she relies solely on temporal proximity to establish causation. Plaintiff fails to address Defendant's argument establishing that temporal proximity alone is insufficient here due to, among other things, intervening misconduct and an intervening pay raise. (*See* Defendant's Motion p. 15–16). Plaintiff also fails to dispel the logical flaw in their argument

---

[4] Plaintiff states: "There is also undisputed record evidence that a succession plan had been approved to re-assign all of [Power's] job duties to Mr. Menard." (Pl. Res., p. 14). Not true. Plaintiff relies on the Succession Planning Email (ECF No. 70-20). Plaintiff claims, "Torres' email indicates that before ultimately becoming Facilities Manager, Mr. Menard would first '[sic assumed all responsibilities under my supervision to operate and maintain the entire tank farm and hydrant system,' which, at the time were all of Plaintiff's job duties." (Pl. SMF ¶41). Plaintiff's interpretation contradicts the email itself and Torres' description of the email during his deposition. Plaintiff reads language into the email that is not there. The following bold text is Plaintiff's, not Torres': "**before ultimately becoming** Facilities Manager, Mr. Menard **would first** . . . ." (Pl. SMF ¶41). By adding this text, Plaintiff changes the meaning of the email. Nothing in Torres' deposition testimony supports Plaintiff's reading. Critically, Plaintiff never showed Torres the email during his deposition, and never asked Torres to confirm or deny Plaintiff's unfounded interpretation of the email, even after Torres himself mentioned the email. (ECF No. 72-5, Torres depo., pp. 53:19-56:6). At the time of Torres' deposition on May 23, 2024, Plaintiff had long been in possession of the Succession Planning Email. (Def. Reply SUM Exhibit 7).

3

– the undisputed fact that Torres suggested Power get surgery, knowing it would involve a medical leave, which Torres did not have a problem with. (Def. SMF ¶28; Pl. Res. SMF ¶28).

### E. *Plaintiff Cannot Establish FCRA Retaliation*

Plaintiff points only to Power's FMLA leave as protected activity. Plaintiff's theory fails. First, Plaintiff fails to address the argument that FMLA leave is not protected activity under the FRCA. (Defendant's Motion, p. 13). Instead, Plaintiff asserts that a request for an accommodation is protected activity under the Americans with Disabilities Act ("ADA"), relying in part on Department of Labor ("DOL") regulations. Plaintiff's reliance on DOL regulations is misplaced. (ECF No. 80, Defendant's Response in Opposition to Plaintiff's Summary Judgment, pp. 6–7).

Even if requesting an ADA accommodation is *sometimes* protected activity under the ADA, Power's was not.[5] "[A] request for FMLA leave does not constitute a request for an accommodation if it fails to indicate that the disability would conflict with the essential functions of the employee's job upon return to work." *Wisner v. Int'l Auto. Components Grp. N. Am., Inc.*, No. 1:21-cv-537, 2023 WL 145006, at *5 (N.D. Ala. Jan. 10, 2023) (citing *Adigun v. Express Scripts, Inc.*, 742 F. App'x 474, 476–77 (11th Cir. 2018)). Nothing in Power's request for leave indicated that his wrist pain would conflict with his job duties upon return. (*See* ECF No. 70-14). To the contrary, Power returned to work without restrictions. (ECF No. 70-18; *see also* Def. SMF ¶¶35–36; Pl. SMF ¶¶35–36). Power had no known lingering limitations after he recovered from surgery and did not consider himself disabled. (Def. SMF ¶¶36, 39, 107; Pl. SMF ¶¶26, 39, 107).

Additionally, dismissal is warranted for the reasons in footnote 4 of Defendant's Motion (Plaintiff's FCRA retaliation claim is preempted by and duplicative of Plaintiff's FMLA retaliation claim). Plaintiff failed to acknowledge or respond to this argument.

### F. *Plaintiff Cannot Establish Pretext*

Where an employee is terminated for misconduct, "the proper inquiry is whether the employer believed that the employee was guilty of misconduct and whether that belief was the reason for the employee's discharge." *Winborn v. Supreme Beverage Co.*, 572 F. App'x 672, 675 (11th Cir. 2014). Courts "do not analyze 'whether employment decisions are prudent or fair;'" the "sole concern is whether unlawful discriminatory animus motivates a challenged employment

---

[5] Plaintiff states: "It is undisputed Plaintiff engaged in protected activity by requesting an accommodation. (Doc. # 25 at 24)." (ECF No. 83 at p. 16). Defendant disagrees. (ECF No. 70 ¶38). And Plaintiff's citation to "Doc. # 25" is incomprehensible to Defendant.

decision.'" *Baker v. Russell Corp.*, 372 F. App'x 917, 920 (11th Cir. 2010) (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999)). A plaintiff's argument fails unless it "would allow a reasonable factfinder to find [the employer's] stated reasons is 'unworthy of credence.'" *Berry*, 84 F.4th at 1309 (11th Cir. 2023) (quoting *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020)). Here, Plaintiff's evidence falls short.

1. <u>Even If Menzies Deviated From Its Progressive Discipline Policy, the Deviation Cannot Establish Pretext Because the Policy is Discretionary</u>

Plaintiff argues Torres failed to follow Menzies' progressive discipline policy. When "management has discretion as to whether to follow the discipline policy, then a failure to follow the policy does not show pretext." *Ritchie v. Indus. Steel, Inc.*, 426 F. App'x 867, 873 (11th Cir. 2011); *Butler v. Econ-O-Check Corp.*, No. 1:22-cv-1465, 2024 WL 1252959, at *6 (N.D. Ga. Mar. 4, 2024) (applying *Ritchie* where a "policy afford[ed] Defendant the right to skip steps depending on the facts of each situation"); *Powers v. Catalent Pharma Sols., LLC*, No. 8:22-cv-1842, at *9 (M.D. Fla. Dec. 6, 2023) (same).

Menzies' policy provides, in relevant part: "Depending on the nature of and severity of the inappropriate conduct, the Company may discipline employees through any of the below disciplinary steps." (ECF No. 82-9, p. 5). It also provides: "[P]rogressive discipline is not a 'one size fits all' approach, and the Company may in its sole discretion skip one or more disciplinary steps." (*Id.*) It also provides: "Termination of employment may either be the result of continuous and uncorrected behavior that has been addressed through previous disciplinary steps or the result of a single instance of inappropriate conduct depending on the nature of the infraction." (*Id.* p. 6).

Stated differently, Menzies' policy is implemented through management discretion. So, even if Torres somehow deviated from the policy, his deviation does not establish pretext. Moreover, the Company *did have* significant documentation of Power's continuous and uncorrected misconduct, and the EPD Power received when he was terminated (ECF No. 70-28 ("Termination EPD")) was, itself, further documentation of Power's misconduct. (Def. SMF ¶¶54–70; Def. Reply SMF ¶¶109, 120, 137, 138).[6]

---

[6] Plaintiff claims "Torres . . . consistently document performance concerns with other employees." (Pl. Res., p. 4). Plaintiff's citation for this claim (Pl. SMF ¶108), does not support the proposition. It merely states: "Menzies has a progressive disciplinary policy." (*Id.*) Plaintiff also improperly relies on inadmissible evidence—Plaintiff relies on statements from Power that are inadmissible hearsay, and Plaintiff relies on statements from James Huntze that relate to matters about which Huntze admittedly lacks personal knowledge. (Def. Reply SMF ¶¶109, 146, 147). Courts do not

5

2. <u>Menzies Has Not Given Shifting Reasons for Power's Termination</u>

Menzies' EEOC position statement and Menzies' motion for summary judgment do not give shifting reasons for Power's termination.

First, Defendant has consistently stated—in Power's Termination EPD, in its EEOC position statement, in every relevant deposition, and in its motion for summary judgment[7]—that Power was going to permit an outside company to use the vacuum truck, not that an outside company *actual did* use the vacuum truck. The fact that other responsible co-workers interceded to prevent the third party from actually operating the vacuum truck, after Power was going to do so, does nothing to mitigate the severity of Power's misconduct. Critically, Plaintiff does not meaningfully dispute that Power gave permission to an outside company to use the vacuum truck without authorization, without Torres' permission, and without notifying Torres; that Power is the only Menzies employee ever to do so; and that allowing a third party to use the vacuum truck would expose Menzies to significant liability and risk. Plaintiff's only dispute is that a third party did not actually use the truck. (Def. SMF ¶¶78–79, 85–92; Pl. SMF ¶¶78–79, 85–92).

---

consider inadmissible evidence when weighing summary judgment, so the Court should disregard the inadmissible statements of Power and Huntze. *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1156 n.2 (11th Cir. 2021).

    Plaintiff's passing comment—without a citation to the record—that Torres "could not recall the details of other enumerated incidents allegedly occurring in February 2022" is untrue. When deposed, roughly two years after Power's termination, Torres recalled Power using "his phone constantly, watching videos, YouTube, instead of paying attention to what he was supposed to be doing." (ECF No. 72-5, Torres depo., p. 25:21-24). He recalled Power "approving mechanics' vacation [even though] it was Mike Menard's job." (*Id.* p. 74:11-15). He recalled an instance where he had to text Power about routinely arriving at work late and leaving early. (*Id.* p. 73:13-15 (referencing ECF No. 70-13, at Powers000216)). Regarding the first enumerated incident on Power's Termination EPD, Torres recalled that there was "a verbal sit-down with [Power]," that the operators involved also received discipline, and that the incident was discussed during a morning shift meeting. (*Id.* pp. 71:16-72:7). (*See* Def. SMF ¶137–38).

[7] ECF No. 70-28 (Power's Termination EPD: "Failed to notify or discuss with GM *a decision to allow* an outside company to utilize the vac truck." (emphasis added)); ECF No. 82-14 (EEOC position statement, at MENZIES_000352: "Mr. Power permitted an outside company to use Menzies's vacuum truck without authorization, without Mr. Torres's permission, and without Mr. Torres. Instead, when [Menard] asked Mr. Power if he had asked Mr. Torres whether the third party could use the equipment, Mr. Power lied and said that he 'had it covered.'"); Def. SMF ¶ 79 (stating: "Power permitted an outside company to use Menzies' vacuum truck without authorization, without Torres' permission, and without notifying Torres" and citing the deposition testimony of every witness with personal knowledge of the incident); Defendant's Motion, p. 4: ("Power—contrary to established protocol—authorized the employee of an outside company to operate Menzies' vacuum truck.").

Second, Menzies did not terminate Power solely because he refused Torres' instruction to turn in his work badge and cellphone and leave the premises on February 9, 2022, after he was confronted about his misconduct. (Def. Reply SMF ¶124). Power was terminated for giving permission to an outside company to use the vacuum truck, and for the other five instances of misconduct stated on the Termination EPD; Power's insubordination was merely "the icing on the cake." (*Id.*).

Third, the fact that there are two different versions of Power's Termination EPD with minor, immaterial differences does not establish pretext. ECF No. 82-14, p. 72 is a rough-draft version of Power's termination EPD ("Rough Draft Termination EPD"). Torres composed the Rough Draft Termination EPD and sent it to Pichardo on February 15, 2022. (Def. Reply SMF ¶135). Pichardo noticed the Rough Draft Termination EPD was on an old form and provided Torres with the updated form EPD, which contained an up-to-date Company logo, and asked Torres to move the information over to the updated form. (*Id.*). Torres did as he was instructed and returned the final draft of the termination EPD to Pichardo ("Termination EPD"). (*Id.*). Several months later, when Power filed a charge of discrimination with the EEOC and the Company began preparing its EEOC position statement, Pichardo helped outside counsel compile the relevant documentation. (*Id.*). Pichardo relied on the electronic personnel file for Power, and mistakenly assumed it contained all relevant files. (*Id.*). Accordingly, Pichardo mistakenly provided outside counsel with the Rough Draft Termination EPD and not the Termination EPD. (*Id.*). Defendant was not aware Pichardo mistakenly provided the Rough Draft Termination EPD until December 2023—after Plaintiff initiated this action and the parties began discovery—when Plaintiff raised the issue to Defendant's counsel. (*Id.*). Once the issue was brought to Defendant's attention, Defendant discovered that some of the files in Power's hard-copy personnel file were not included in his electronic personnel file; and at that time, Defendant collected and produced Power's entire hard-copy personnel file to Plaintiff, including the Termination EPD. (*Id.*). The production was made on January 2, 2024, long before the June 13, 2024 close of discovery. (*Id.*). Critically, the two EPDs are the same in every material respect and are totally consistent in stating that the reason for terminating Power was due to his willingness to allow a third-party company to use Menzies' vacuum truck. (*Id.* ¶136).

A mere mistake, oversight, or administrative error on the part of the employer is not sufficient to establish pretext; pretext means "a lie, specifically a phony reason for some action."

*Garcia-Cabrera v. Cohen*, 81 F. Supp. 2d 1272, 1281 (M.D. Ala. 2000) (quoting *Wolf v. Buss (Am.), Inc.*, 77 F.3d 914, 919 (7th Cir. 1996)); *see Sprowl v. Mercedes-Benz U.S. Int'l Inc.*, 815 F. App'x 473 (11th Cir. 2020) (a genuine oversight or an administrative mistake does not establish pretext). Here, the uncontested evidence shows that Pichardo providing the Rough Draft Termination EPD and not the Termination EPD was a mistake, oversight, or administrative error.

Moreover, Plaintiff's attempt to imply that Menzies *knowingly* withheld the Termination EPD from the EEOC to conceal references to Power's FMLA leave and altered job duties is baseless and illogical. Plaintiff's suggestion that Pichardo provided the Rough Draft EPD "knowing" it was the rough draft is a blatant misrepresentation, directly contradicted by the record. (Def. SMF ¶¶131, 135).[8] Further, Menzies' EEOC position statement discussed Power's FMLA leave at length, as well as the change to his supervisory responsibilities. (ECF No. 82-14, at MENZIES_000349 to 000350). If Menzies wanted to conceal these details from the EEOC, it would not have spent multiple pages of its EEOC positions statement discussing them.

3. Plaintiff's "Cover Up" Theory Is All Smoke and No Fire

In a last-ditch effort to establish pretext, Plaintiff lists three additional "facts" that—in Plaintiff's view—suggest a coordinated attempt to "cover up" unlawful discrimination *ex post facto*. Plaintiff's "cover up" argument, which sounds in conspiracy theory, rings hollow.

Torres submitted a request to IT on February 9, 2022, after Power was terminated, asking the IT department to reset Power's Company-owned cellphone to its factory settings. (Def. Reply SMF ¶¶126–27). Power had refused to return the device to the Company when he was terminated and wrongfully maintained possession of it, but the Company can (and did) restore the device to factory settings remotely. (Def. Reply SMF ¶¶126–27). Plaintiff points to this as evidence of pretext. It is not.

First, Plaintiff says "[n]either the Company nor Mr. Torres offered any explanation as to why . . . Mr. Torres had requested Plaintiff's cell phone remotely restored to factory settings." (Pl. Res., p. 7). That is not true. The Company's corporate representative explained that when the

---

[8] The Court should ignore Plaintiff's passing argument that a jury would have reason to discount Power's several EPDs because Power refused to sign them. A fact issue is only genuine if "it has a real basis in the record." *Matsushita*, 475 U.S. at 586 (1986) (speculation, conjecture, or "metaphysical doubt" do not create a fact dispute). The uncontested evidence is that Power was issued several EPDs, which Torres and Spennato discussed with him, and which he refused to sign. (Def. Reply SMF ¶109). Plaintiff's speculation, conjecture, and metaphysical doubt about whether Power received the several EPDs does not create a genuine issue.

8

Company terminates an employee, its "protocol is to obtain the phone" and restore the devices to factory settings "for the purpose of confidentiality." (ECF No. 82-11, Bazerkanian depo., pp. 96:9-97:13). Curiously, when Plaintiff deposed Torres, they did not ask him why he submitted a request to IT to have Power's cellphone reset to factory settings. (ECF No. 72-5, Torres depo., p. 43:8-10). Presumably, he submitted the request because it is Company protocol. (*See* Def. SMF ¶126).

Second, Plaintiff claims resetting the phone was spoliation. By Plaintiff's own admission, at the time Power's cellphone was reset, Menzies had no claim or threatened claim that would have required a deviation from their normal business practice. (Pl. Res. p. 7). Plaintiff cites no authority (because there is none) to support the argument that spoliation occurred here. *See Wilson v. Wal-Mart Stores, Inc.*, ("A party is not guilty of spoliation when it destroys documents as part of its regular business practice and is unaware of their potential relevance to litigation.").

Plaintiff attempts to show pretext by arguing that Torres began his succession planning in 2022 but still is not retired. (Pl. Res., p. 7). Torres' undisputed testimony is that, as of 2022, he planned to retire within three or four years (i.e., 2025 or 2026). (Def. Reply SMF ¶113; *see also* ECF No. 70-23). Torres has managed Menzies' Fort Lauderdale Airport facility for roughly 20 years. (ECF No. 81, Def. Opp. To Pl. SMF ¶21). Succession planning for such a position takes time. The fact that Torres is not yet retired—consistent with his stated plan to retire in 2025 or 2026—does not establish pretext. However, even if it did not align with Torres' stated intention—even if Torres changes his mind and decides not to retire—his not retiring is no evidence of a "cover up." Plaintiff's reliance on this "fact" is nothing beyond speculation, conjecture, and metaphysical doubt." *Matsushita*, 475 U.S. at 586

Plaintiff also points to a typo in one of Defendant's discovery responses. Defendant served its initial Response to Plaintiff's First Set of Interrogatories to Defendant ("Defendant's First Interrogatory Responses") on September 26, 2023, the same day Defendant served its first production of documents. (Def. Reply SMF Exhibit 1). Defendant's First Interrogatory Responses had a typo. (Def. Reply SMF ¶115). The Response to Interrogatory No. 5 should have said that Menard was promoted to operations manager in July 2022, but it erroneously said July 2023. (ECF No. 70-23). Documents produced by Defendant that same day showed Menard was, in fact, promoted in July 2022, not 2023. (Def. Reply SMF Exhibit 1; ECF No. 70-31). The typo was first brought to Defendant's attention when Plaintiff deposed Defendant's corporate representative on May 23, 2024. (ECF No. 82-11, Bazerkanian depo., p. 121:10–123:21). After the depositions,

9

Defendant promptly corrected the typo by serving Defendant's First Supplemental Responses to Plaintiff's First Set of Interrogatories to Defendant. (ECF No. 70-23; Def. Reply SMF ¶115).

Plaintiff's attempt to exploit the typo as evidence of pretext is absurd. Defendant's EEOC position statement was filed June 14, 2022. (ECF No. 82-14, p. 2). At that time, Menard had not yet been promoted to operations manager and Torres was still performing the operations manager job duties. (Def. SMF ¶¶103–04). When Torres was asked about the timing of Menard's promotion, he testified, multiple times, that he could not recall, despite counsel's persistent confrontational questioning. (ECF No. 72-5, Torres depo., pp. 98:12–101:4). Torres, trying to remember, testified that he thought he had assumed the operations manager duties for ten or eleven months, but maintained that he could not recall. (ECF No. 72-5, Torres depo., pp. 100:16-101:4). This is another example of Plaintiff trying to exploit a mistake, oversight, or administrative error, which is not enough to establish pretext. *Garcia-Cabrera*, 81 F. Supp. 2d at 1281; *see also Sprowl*, 815 F. App'x 473 (a genuine oversight or an administrative mistake does not establish pretext).

Finally, Torres' testimony that he sought advice of outside counsel, six months after Power's termination, on whether he could fill the operations manager position is not evidence of pretext. *See Yoho v. Bank of N.Y. Mellon Corp.*, No. 2:17-cv-917, 2020 WL 7336579 (W.D. Pa. Dec. 14, 2020) ("The involvement of legal counsel . . . does not create any sort of inference of pretext."), *aff'd* No. 21-1071, 2020 WL 296637 (3d Cir. 2022); *Hall v. Teva Pharm. USA, Inc.*, 214 F. Supp. 3d 1281, 1297 (S.D. Fla. 2016) (in-house counsel's legal advice not relevant to pretext analysis). To rule otherwise would set a dangerous, novel precedent that seeking legal counsel is evidence of discrimination, which would disincentivize employers from seeking legal counsel so they can do the right thing in their employment decision-making.

Plaintiff relies on all the same evidence for its "convincing mosaic" argument. For the same reasons this evidence fails to establish pretext, it fails to create a "convincing mosaic" that could establish a genuine issue of material fact.[9]

### III.   CONCLUSION

For the reasons set forth above and in Defendant's Motion, this Court should grant Defendant's Motion for Summary Judgment and dismiss Plaintiff's Complaint in its entirety.

---

[9] Plaintiff's claim that Power did not have access to the Company's intranet for 14 days after he returned from FMLA leave (Pl. Br. p. 8) has no support in the record. (Def. Reply SMF ¶141).

Dated:  July 26, 2024

                 Respectfully submitted,

                 */s/ Mark Neuberger*
                 Mark Neuberger
                 Florida Bar No. 982024
                 FOLEY & LARDNER LLP
                 One Biscayne Tower
                 2 South Biscayne Boulevard, Suite 1900
                 Miami, FL 33131
                 305.482.8408
                 mneuberger@foley.com

                 John R. FitzGerald (*pro hac vice*)
                 Wisconsin Bar No. 1120150
                 FOLEY & LARDNER LLP
                 777 East Wisconsin Avenue
                 Milwaukee, WI 53202
                 414.297.5079
                 jfitzgerald@foley.com

                 *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2024, I electronically filed the above with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

*/s/ Mark Neuberger*
Mark Neuberger